[No. 1634.]

THE BURLEIGH BUILDING CO. ET AL. v. THE MERCHANT BRICK AND BUILDING CO.

13  455
16  270

1. MECHANICS' LIENS—BONDS—SURETIES—PERSONAL JUDGMENTS.
Where in an action to foreclose a mechanic's lien against a purchaser of the property, who purchased after the material was delivered for which the lien was claimed, the purchaser gave a bond to release the property from the lien conditioned to pay any judgment that might be obtained against the purchaser and declared a lien on the property, and it was not shown that the purchaser had any interest in the contract or in the property at the time the contract for the material was made, nor that the purchaser accepted or agreed to carry out or in any way became bound by the contract to purchase the material, no personal judgment could legally be rendered against

the purchaser and hence the sureties on the bond were not liable under its conditions.

2. MECHANICS' LIENS—STATEMENT—COMPLETION OF WORK.

A mechanic's lien statement is not required to state the time of the completion of the work, and a recital of the time of such completion in the statement is not binding on the lienor, and he may show by other evidence that the work was completed at a later date.

3. MECHANICS' LIENS—COMPLETION OF WORK.

Under a statute requiring a mechanic's lien statement to be filed, and suit to be commenced within certain times after the completion of the work, the work referred to is work in the ordinary progress of the building by the party or parties obligated to do it and done for and in the interest of the owner. That a person was seen painting a cornice on the building for part of a day was not sufficient evidence to show that the work was not completed prior to that time.

4. MECHANIC'S LIENS—ATTORNEYS' FEES.

The mechanic's lien act of 1893 so far as it allows attorneys' fees for plaintiffs' attorneys in foreclosures of mechanics' liens is invalid. No judgment can be entered for attorneys' fees in such cases.

*Appeal from the District Court of Arapahoe County.*

FIFTY-THREE thousand six hundred brick were furnished by the Merchant Brick and Building Company and delivered at lots 7, 8 and 9, block 23, Wyman's Addition to the city of Denver, being property situated on Race street between Colfax and Sixteenth avenue. The value of the brick at the price at which the company agreed to sell them was $225.80. The brick was delivered somewhere between the 1st day of April and the 13th day of May, 1895. Between the commencement of the delivery and the 22d day of April, 40,000 had been hauled and unloaded. The balance was hauled afterwards and it is said in May a little over a thousand were delivered. Henry J. Burleigh was the owner of the lots when the contract was made and up to the 22d day of April when they were conveyed to the Burleigh Building Company. The circumstances under which the contract, if any, was made, are these: one Frank Snell was about the premises and in some way which is entirely undisclosed by the evidence had something to do with the building of the house. Whether he was a contractor, a subcontractor, an agent,

a superintendent of the contract and representative of the owner, or whether he occupied some other position we do not know. At all events, he was there on the ground and with him the president of the brick company had some talk about furnishing brick. Snell stated to Merchant that unless he made some arrangement with the Hallack & Howard Company to furnish the brick as well as the other material he would buy the brick of him. · What authority he had to make the statement, from whom he got the authority, and who might be bound by the arrangement, does not appear. This much however is disclosed. On a subsequent call at the premises Merchant had a conversation with Burleigh who was the owner of the property up to the 22d day of April. In talking with Burleigh about buying the brick Burleigh said that Snell might possibly buy the brick of the Merchant company, and that whatever Snell did was all right. This would probably be a sufficiently stout admission, in the absence of other evidence, from which, coupled with the circumstances of the case, to wit, the ownership of the property, the presence of the owner and the presence of Snell, to bind the owner on the theory of Snell's agency to buy the brick. There seems also to be some evidence in the record of Snell's agency. The case in nowise turns, as we view it, upon this question of agency or authority, except it is important to bear in mind with whom the contract was made and the terms of it when we come to the construction of the bond which is the subject-matter of the present appeal. The work went on until the 1st day of June when it ceased and nothing was done on the property until after the lien was filed and probably after the suit was begun. In stating this as a fact we state it according to the present record, without at all intending to conclude the parties with reference to the question. This matter will be the subject of proof on the subsequent trial and the parties will be at liberty to offer any evidence about it which they can obtain. We simply conclude from this record as it now stands, work was ended on the 1st of June for all lien purposes. The only evidence of any work after June 1, was

the evidence given by Mr. Merchant and one other witness who was a laborer on adjacent property, to the effect that on the 10th of June, which they seem in a very odd way to be able to identify, a man was seen painting a cornice at the house for part of the day. There was no evidence that he was working for Burleigh, none that he was working for the Burleigh Building Company, none that he was there by the direction of any person having any interest in the property. It does satisfactorily appear work had long prior to that time ended but this man was there for a short time doing a little painting. As we shall hereafter decide this is not proof that the work continued until that date. The lien statements as filed were on the theory that work had ended and had been completed so far as the contract was concerned on the 1st of June. Such was originally the pleading in the case, though this was afterwards amended to charge it as of the 10th of June to escape the force and effect of the admission furnished by the lien statement and the complaint. The lien itself was filed on the 11th of July. Suit was begun on the 9th of November. On these facts the appellants insist the lien was not filed in time nor the suit begun in time to save any lien rights which the parties might have.

There is still another question in the case about which the facts must be stated in order to furnish the basis for our decision. This lien was filed and the suit begun under the act of 1893. By one of the provisions of that act parties in interest either before suit is begun to enforce the lien or thereafter may file a bond and thereby discharge the lien, release the property, and the person entitled to a lien can then proceed against the bondsmen, or if the suit has been begun, as was the present case, the bond must be filed in the suit, the clerk furnishes a certificate of the fact, the lien is thereupon discharged on the record and the suit continues against the principal, and the bondsmen can be made parties and judgment may go against them in that suit. Such is this case.

The bond was accepted, at least there was no objection

offered to it, the defendants or some of them pleaded it as a defense, its execution was admitted and the plaintiff required that the sureties on the bond should be made parties to the suit, and subsequently offered the bond in evidence as part of his case, and ultimately took judgment against the sureties on the bond as well as against the principal. It is important now to notice the terms of the bond. The persons bound by the obligating clause were the Burleigh Building Company as principal, Katherine D. O'Donnell and Thomas J. O'Donnell as sureties, in twice the amount of the claim. Under the whereas there is a recital of a filing of the lien, the beginning of an action by the Merchant Brick and Building Company against the Burleigh Building Company and others to foreclose the lien and then comes the following condition:

"Now therefore, the condition of the above obligation is such, that if the said The Burleigh Building Company shall well and truly pay or cause to be paid any judgment rendered against it in said suit and adjudged and decreed to be a lien upon the above described premises, or the said premises shall then be subject to the lien of any such judgment so declared to be a lien thereon to the same extent as they now are subject to said lien, then the above obligation to be void, otherwise to remain in full force and virtue."

The bond was executed by the Burleigh company through its president and secretary and by the two sureties under the seal. On the conclusion of the plaintiff's case a motion for nonsuit was made and overruled, and the defendants failing to introduce any testimony, a decree was entered foreclosing the lien, finding the Burleigh company responsible under the contract, and therefore the sureties responsible by virtue of the bond which they had given, and judgment was entered against the sureties as well as the principal, and from this judgment the appeal is prosecuted.

Mr. T. J. O'DONNELL and Mr. MILTON SMITH, for appellants.

Mr. GEO. B. CAMPBELL, for appellee.

BISSELL, P. J.

A judgment ought never to have been entered against the sureties on the bond. This matter is very easily demonstrated by a comparatively brief consideration of the terms of the instrument and of a few facts respecting the contract under which the brick was sold. There are many questions suggested by the record which if decided would necessarily call for the construction of a number of the provisions of the lien act of 1893. While this construction is requested and a good deal of argument directed to the propositions which would compel the consideration, we cannot easily imagine the necessity to consider them, though possibly there may be other suits pending in which a decision of some of these matters would be desirable. The act of 1893, however, has been repealed and a new act was passed in 1899. The later act, of course, contains many of the provisions of the act of 1893 as well as some additional ones, as the last legislature, like all others which have legislated on this question, has attempted to broaden the statute and enlarge the rights and further secure the interests of the material men and builders. We have already had occasion to animadvert on this species of legislation, but it may be wisest for the courts to construe the acts which the legislature has passed and not criticise the policy which has led to the enactments. The repeal, however, and the change in the act is a complete excuse for our refusal to consider any other questions than those which are absolutely indispensable to the determination of the present appeal. We shall therefore only consider those matters which we regard as vital, and which being determined adversely to the appellee, must reverse the judgment.

The statement shows the bond was executed by the Burleigh Building Company and the O'Donnells as sureties, on a condition in effect that the Burleigh Building Company should pay any judgment which should be legitimately

rendered against it and be declared to be a lien on the premises, provided the premises were then subject to the lien of the judgment. This is the legal effect of the condition. Manifestly then to entitle the Merchant Brick and Building Company to recover from the sureties, it must regularly and lawfully obtain a judgment against the Burleigh Building Company, and the evidence must warrant it, otherwise the sureties may not be held. If this be not true, it would follow that should the Merchant Brick and Building Company obtain a judgment against the Burleigh company without right or warrant, the sureties would still be bound and remediless because without the right to question the character of the judgment. This could never be for the rights of the sureties are to be measured by the terms of the contract into which they have entered, and unless their principal be legally held, no judgment can rightfully be entered against them. It remains then to determine the validity of this judgment against the Burleigh Building Company. We conclude there is no evidence in the record to justify it. By this we mean no evidence which warrants a personal judgment against the Burleigh Building Company. We do not refer to a decree of foreclosure legitimately entered against Mr. Burleigh, the antecedent owners and possibly the building company. This is true because the condition of the bond is that the Burleigh Building Company shall pay any judgment rendered against them and adjudged and decreed to be a lien on the premises. It therefore follows, there must be some judgment rendered against the building company for the value of the materials sold and delivered which the company is bound to pay, and this judgment must likewise be declared a lien on the premises. We are quite ready to concede a bond might have been drawn containing a condition that if the lien should be established against the property and whatever interests the Burleigh company acquired by the transfer of April 22, then, and in such event, the sureties should be liable. This was not the bond, however, and such is not its condition. Its condition is to pay any judgment rendered against the com-

pany in the suit which can only mean a money judgment which the Burleigh Building Company is bound to pay, and for which the sureties must respond. Under these circumstances in order to establish a liability against the O'Donnells it is incumbent on the plaintiff to prove facts entitling it to a personal judgment against the Burleigh Building Company for that money. This it wholly failed to do. Referring to the statement, it shows the property was owned by Henry J. Burleigh on the 1st of April, at the time Burleigh and Snell talked with the appellee about the sale of brick. If any contract was made, it was made then and made with those parties only. In it the Burleigh Building Company had no interest, nor so far as the record shows had they then any title to, or interest in, the property. Under these circumstances the corporation was in no manner bound by the contract of purchase, nor did the fact that this corporation ultimately became the purchaser of the property or the holder of the title bind them to pay for the brick which had been delivered prior to the 22d day of April, nor was it bound for the 13,000 brick thereafter delivered unless it was made to appear the company accepted the brick and appropriated it for the purpose of the building. This was not established. No evidence was introduced to show the Burleigh Building Company accepted or agreed to carry out or in any wise became bound by the original contract for the purchase of the brick made either with Burleigh or Snell or both. Under these circumstances there could be no personal judgment against the Burleigh Building Company for the brick delivered prior to the 22d day of April. As to the 13,000 brick thereafter delivered, there is nothing to show that the company received them, had any knowledge of them, became bound to pay for them, or under the terms of its purchase of the property from Henry J. Burleigh became obligated to pay for them. It may easily be, and I can readily conceive, the Burleigh Building Company took title under an agreement to assume these outstanding obligations. This concession, however, in no manner justifies the judgment. The

judgment must rest on evidence.    The sureties have a right
to insist the plaintiff shall prove his case, and failing to sup-
port it by competent and sufficient testimony no judgment
shall be entered against the principal by which they shall be
concluded.   We agree with them that the plaintiff made out
no case which entitled it to a personal judgment against the
Burleigh Building Company, and it therefore was not entitled
to recover as against them.   Doubtless on the subsequent trial
counsel may be able to produce testimony which will obviate
the difficulty.   With this possibility we have no concern,
simply determining that on the record as it stands, he was
not entitled to judgment against the company and therefore
he ought not to have had judgment against the sureties.

There is another proposition to which we will advert as it
will have a good deal of bearing on the subsequent trial.
According to the statute if the brick was sold to Snell as a
contractor, he was bound to file his lien within a fixed time
and if a subcontractor within another fixed date, and in any
event according to section 6, the lien could not hold the prop-
erty more than four months after the completion of the struc-
ture or improvement unless an action should be commenced
within that time to enforce it.   By the provisions of section 3
a cessation of labor on any unfinished building is the equiv-
alent of completion.   We are quite unable to determine Snell's
connection or relation to the contract.   The contract was a
verbal one and the evidence does not disclose whether it was
made with Burleigh or whether it was made with Snell or
with both.   If Snell was the original contractor and the Mer-
chant Building and Brick Company was a subcontractor, this
latter company was bound to file its lien within thirty days
from the time the structure was completed.   The structure
would be legally completed by the cessation of labor for more
than thirty days.   The record shows the work stopped in
May and nothing was done until after the lien was filed and
probably not until after the suit was commenced.   When the
structure was completed for the purposes of the act the Mer-
chant Brick and Building Company was bound to file its lien

within thirty days thereafter, and bound also to begin suit within four months from the date of that completion. When the work ceased is therefore an important and pivotal inquiry. It will be remembered the original lien statement recited the work was completed and the labor ended on the 1st of June, and the complaint followed the lien statement. If both had been permitted to stand the plaintiff must necessarily have failed to recover because a suit was not begun until the 9th of November following, which was more than four months from the date of the alleged completion of the structure. To overcome this difficulty the plaintiff obtained leave to amend his complaint, setting up the completion of the structure on the 10th of June instead of the 1st. No objection was made to the entry of the order and the amendment was therefore properly made. Notwithstanding this fact, it is still insisted the parties are bound by terms of their lien statement. We agree with the trial court the law does not require that date to be inserted, and if put in, it is in no way conclusive on the lienor, and while it might be of some value as against his declarations, yet, it is not in the legal sense so far conclusive that he may not prove the actual time. We now come to what the record shows with reference to the work which was proven in order to take the case out of the operation of this provision which may be called a statute of limitation. The evidence was that the work ceased on the 1st of June. We imagine it stopped before, but it had certainly ended on that date unless what Mr. Merchant and the other witness testified to proves the work continued after that period. The evidence simply is, a person was seen at work on the building painting a cornice on the 10th of June for a portion of a day. Nothing else. This simple proof is relied on to remove the bar of the statute. We do not believe this evidence alone without more is enough. Questions of a similar character have arisen in other states under similar statutes and the general doctrine undoubtedly is, that the work relied on to remove the bar must be work in its ordinary progress on the building, carried on by the person obligated to perform it and done for and in

the interest of the owner who is putting it up. Without referring to a long line of authorities on the subject, *vide Joost et al. v. Sullivan*, 111 Cal. 286, *Santa Clara Valley Mill & Lumber Co. v. Williams et al.*, 31 Pac. Rep. 1128, *Association v. Harrison et al.*, 120 Pa. St. 28, and *Sanford v. Post*, 41 Conn. 617.

There are many cases which hold that it is not competent for mechanics by trivial work and trivial alterations to extend the time within which the lien may be filed. This is the law in all states where such statutes exist. It would therefore follow, work of this sort established only by the evidence offered without more, would not be held to be a continuance of labor for lien purposes. The plaintiff declared in his lien statement that June 1 was the date when the building was completed. He likewise so pleaded it, and when he amended, inserting the 10th of June, it in no manner destroyed the force of the admission found in the statement and in the original pleading, and this cannot be overcome by the evidence which the case contains. The work had ceased and was completed on the 1st of June unless the little painting that was done on the cornice was done by the owner, the contractor, or in the interests of one or both of them and in the interest of the one and the execution of the contract by the other. How can we tell from this testimony who did the painting, for what purpose it was done, and in whose interest it was prosecuted? It may have been done by some person other than the contractor or by some person other than any contractor on the building, by some person other than the owner, or by some person who bore no relation to either. If this should turn out to be the fact counsel for the appellee would hardly contend it would operate to fix the point at which work ceased and the building was completed for the purposes of a lien statement. Unless on the subsequent trial the appellee is able to produce other evidence it must be found the work was finished on the 1st of June, the lien should have been filed on the 1st of July, the suit begun on the 1st of November, and that neither the lien was filed nor the suit

begun within the time necessary to save the material man's rights.

There is another proposition to which we will refer, although it does not seem to have been much relied on by counsel. In the judgment entered there was a proviso that plaintiff's attorney should have $50.00 attorney's fees. The appellants insist this is not right because there was no evidence offered from which the value of those services could be determined and on which it could be computed. We agree in that respect, and do not believe it is competent for the court to enter judgment for attorneys' fees without some evidence to show the services performed and the value of what was done. There is a question beyond all this, and much more troublesome to the plaintiff, and which is the law in this jurisdiction until it shall be otherwise determined. There can be no judgment for attorneys' fees under the law of 1893. We considered this question in a recent case, and held the act in this respect invalid. *Los Angeles Gold Mining Co. v. Campbell, ante,* p. 1.

We would not reverse the case on this ground because it would be very easy to reduce the judgment by that sum and affirm it as to the difference. Under our statutory authority this we should undoubtedly do were it not for the other propositions which compel us to reverse the case.

For the reasons already given the judgment will be reversed and the cause sent back for further proceedings in conformity with this opinion.

*Reversed.*